IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

|  |  |  |
|---|---|---|
| JERRY MARKS and CHERYL MARKS, | : | |
| | : | |
| Plaintiffs, | : | CASE NO. |
| v. | : | 5:11-CV-167 (CAR) |
| | : | |
| PHH MORTGAGE CORPORATION, | : | |
| d/b/a COLDWELL BANKER | : | |
| MORTGAGE, | : | |
| | : | |
| Defendant. | : | |

_____

**ORDER ON DEFENDANT'S MOTION TO DISMISS**

Currently before the Court is Defendant PHH Mortgage Corporation's ("PHH") Motion to Dismiss Plaintiffs' Amended Complaint. [Doc. 20]. In its motion, Defendant contends that Plaintiffs' Amended Complaint, containing eight counts, should be dismissed in its entirety. Having considered the matter and relevant case law, the Court finds that Defendant's motion is **GRANTED** in part and **DENIED** in part for the reasons discussed below.

**Applicable Standard**

On a motion to dismiss, the Court must accept as true all well-pleaded facts in a plaintiff's complaint. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009). To avoid dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint

1

must contain specific factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports a plaintiff's claims. Bell Atlantic Corp., 550 U.S. at 556.

## Background

Plaintiffs Jerry and Cheryl Marks's well-pleaded allegations are as follows.  In October 2001, Plaintiffs entered into a promissory note and mortgage contract with PHH.  In 2003, Plaintiffs fell behind on their mortgage payments and filed a Chapter 13 bankruptcy.  They were discharged from bankruptcy in July 2008, and were current on their mortgage.  Plaintiffs allege that almost immediately after they were discharged, PHH attempted to collect money Plaintiffs did not owe and threatened them with foreclosure.

In October 2008, PHH refused to accept payment from Plaintiffs and claimed they were in arrears of $10,024.54 on the mortgage.  After unsuccessfully attempting to work directly with PHH, Plaintiffs reopened their bankruptcy case and filed an

adversary proceeding against PHH. On April 13, 2010, Plaintiffs and PHH entered into a consent order that settled all claims between the parties and terminated Plaintiffs' escrow account. Specifically, the order required PHH: (1) to write off approximately $10,000 of Plaintiffs' loan and approximately $5,000 in fees; (2) to return any funds left in Plaintiffs' escrow account; and (3) to send Plaintiffs monthly statements. In turn, Plaintiffs agreed to resume monthly payments and released PHH from any claims that could have been asserted up to and including the date of April 14, 2010.

Plaintiffs made regular mortgage payments from May to September 2010. PHH returned Plaintiffs' payments in September, October, and November 2010, telling them their loan was now in default. Plaintiffs continued to attempt to make the required monthly payments, and made their December 2010 payment through PHH's attorney, Daniel Wilder. PHH again refused Plaintiffs' January 2011 payment, but accepted and cashed Plaintiffs' payments in February, March, and April 2011.

Plaintiffs assert PHH falsely reported to the credit bureaus that they were in default. Plaintiffs allege that between July 24, 2010, and October 27, 2010, they sent five letters disputing PHH's information regarding Plaintiffs' loan, each of which was a qualified written request ("QWR") under the Real Estate Settlement Procedures Act ("RESPA"). Plaintiffs received no responses to these letters. In addition, they also

allege they did not receive funds from their escrow account as required by the April 2010 consent order.

Plaintiffs attempted to refinance their mortgage, but they have been unable to do so because of the false information reported by PHH. Plaintiffs allege that they have suffered both physically and financially because of PHH's actions, and they seek compensatory and punitive damages, as well as attorneys' fees and costs. Plaintiffs initially filed a Complaint against PHH in May 2011, alleging violations of RESPA and state tort law. Plaintiffs amended their Complaint in July 2011, and PHH asserts that it should be dismissed in its entirety.

Plaintiffs bring eight counts. In Count One, Plaintiffs allege PHH intentionally and negligently failed to exercise due care in servicing their loan. In Counts Two and Eight, Plaintiffs allege PHH violated RESPA by failing to respond to their QWRs. In Count Three, Plaintiffs allege PHH committed defamation by reporting false information to the credit bureaus. In Count Four, Plaintiffs allege intentional infliction of emotional distress. In Counts Five and Six, Plaintiffs seek attorneys' fees and costs as well as punitive damages. Finally, in Count Seven, Plaintiffs allege conversion of the funds in their escrow account.

**Discussion**

As a preliminary issue, PHH asserts that Plaintiffs' claims are barred by the consent order the parties signed on April 13, 2010. In response, Plaintiffs allege that their claims arise from PHH's conduct after the April 2010 consent order, and any information about PHH's actions before the adversary proceeding is mere background. To the extent that Plaintiffs assert claims arising out of conduct prior to the April 2010 release, those claims are barred.

**A. RESPA Claims**

Counts Two and Eight of Plaintiffs' Amended Complaint allege that PHH violated RESPA by failing to respond to multiple QWRs. To ensure that consumers are provided with greater and timely information, RESPA establishes certain disclosure requirements for entities responsible for servicing[1] a federally related mortgage loan. McCarley v. KPMG Int'l, 293 Fed. App'x 719, 722 (11th Cir. 2008); 12 U.S.C. § 2601. RESPA also sets deadlines for servicers to respond to written requests from borrowers.

When a loan servicer receives a "qualified written request," the servicer must send the borrower a written acknowledgement within twenty (20) days, and a full

---

[1] The term "servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). PHH does not dispute that it is a "loan servicer" within the terms of the statute.

response is due to the borrower within sixty (60) days. 12 U.S.C. § 2605(e)(1)(A), (B).  A "qualified written request" is defined as:

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).  If the servicer does not comply with RESPA's deadlines, the borrower can recover actual damages for the failure to communicate, but the borrower is limited to actual damages unless there is a "pattern or practice of noncompliance." 12 U.S.C. § 2605(f).

Plaintiffs allege that they never received a response to the five QWRs they sent to PHH.  For purposes of this motion, PHH argues that two of Plaintiffs' five letters were not QWRs: a letter sent to PHH's attorney, Daniel Wilder, on October 18, 2010, and a letter sent directly to PHH on October 27, 2010.[2]

PHH asserts that the October 18 letter fails to qualify as a QWR because it was sent to PHH's attorney and not directly to PHH.  The issue of whether correspondence sent to a servicer's outside attorney is a QWR is not settled.  The Eleventh Circuit has

---

[2] Typically, in deciding a motion to dismiss, a court should not consider "anything beyond the face of the complaint and documents attached thereto." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007).  Plaintiffs attached both letters to their Amended Complaint, and the contents of these letters are not in dispute.

6

not addressed this issue in a published opinion, but at least one district court in this circuit has held that communication with a servicer's attorney can be a QWR.  Compare McLean v. GMAC Mortgage Corp., Inc., 2008 WL 5246149 (S.D. Fla. Dec. 16, 2008), aff'd 398 Fed. App'x 467 (11th Cir. 2010) (finding letter sent to outside bankruptcy counsel could be QWR where counsel forwarded the letter to the servicer and did not advise plaintiffs to speak directly with the servicer); with Gorham-DiMaggio v. Countrywide Home Loans, Inc., 592 F. Supp. 2d 283 (N.D.N.Y. 2008) (email exchange between mortgagor's attorney and mortgagee's attorney was not a QWR under § 2605(e)).  Thus, the Court will not find at this stage of the litigation that the October 18 letter did not qualify as a QWR.

PHH asserts that the October 27 letter fails to qualify as a QWR because it did not identify a potential loan error, but instead requested a payment book or statement.  However, the definition of a QWR is in the disjunctive; the request may identify an error *or* include a statement that "provides sufficient detail to the servicer regarding other information sought by the borrower."  12 U.S.C. § 2605(e)(1)(B) (emphasis added).  See e.g., Goldman v. Aurora Loan Svc., LLC, No. 1:09-CV-3337-RWS, 2011 WL 3845498 (N.D. Ga. Aug. 29, 2011) (denying motion to dismiss RESPA claim where letter to servicer requested payment history).  Plaintiffs' Amended Complaint adequately states

claims under RESPA, and PHH's request to dismiss Plaintiffs' RESPA claims is **DENIED.**

  B. **State Law Claims**

PHH asserts that Plaintiffs' negligence and defamation claims, Count One and Count Three, are preempted by the Fair Credit Reporting Act ("FCRA"). However, PHH admits that this Court has previously addressed the issue of whether state common law claims are preempted by FCRA. In Baker v. General Electric Capital, Corp., No. 3:10-CV-62(CAR), 2011 WL 1743610 (M.D. Ga. May 6, 2011), this Court adopted the statutory approach, finding that 15 U.S.C. § 1681t(b) does not preempt common law tort causes of action. Although PHH urges this Court to abandon its previous position and adopt a total preemption approach, which it finds "more persuasive," the Court declines to do so. For the reasons stated in this Court's order in Baker, Plaintiffs' negligence and defamation claims are not preempted by the FCRA.

  1. **Negligence Claim**

In addition to its preemption argument, PHH asserts that Plaintiffs' negligence claim should be dismissed because Plaintiffs have failed to allege a duty separate from the parties' contract. Under Georgia law, the failure to perform a contract does not constitute a tort, and a plaintiff "has a tort claim only where, in addition to breaching

the contract, the defendant also breaches an independent duty imposed by law." ServiceMaster Co., L.P. v. Martin, 252 Ga. App. 751, 754, 556 S.E.2d 517, 521 (2001).

Plaintiffs have not pointed to any negligent actions or inactions by PHH that fall outside the company's administration of the loan, and their claims depend solely on the contract between the parties and the April 2010 consent order.  Thus, while discovery may show that PHH was negligent in servicing the loan, that negligence arises "solely out of the parties' contractual relationship," and cannot sustain a separate tort duty. Fielbon Dev. Co., LLC v. Colony Bank of Houston County, 290 Ga. App. 847, 856, 660 S.E.2d 801, 809 (2008).  PHH's request to dismiss Plaintiffs' negligence claim is **GRANTED.**

**2. Defamation Claim**

PHH asserts that Plaintiffs' defamation claim is subject to dismissal because Plaintiffs did not plead special damages.  To establish a claim of defamation, a plaintiff must prove the existence of: "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." Bollea v. World Championship Wrestling, Inc., 271 Ga. App. 555, 557, 610 S.E.2d 92, 96 (2005) (internal citations and quotations omitted).  A plaintiff is not required to prove special harm in the case of libel per se,

9

which is a "publication charging that one is guilty of a crime, dishonesty, or immorality." Johnson v. Citimortgage, Inc., 351 F. Supp. 2d 1368, 1377 (N.D. Ga. 2004).

Under Georgia law, to "charge one as a delinquent debtor is, as a matter of law, not libelous per se," and a writing stating that a person owes a debt "does not render the author or publisher of such statement liable without proof of special damages." Sumner v. First Union Nat'l Bank of Ga., 200 Ga. App. 729, 730, 409 S.E.2d 212, 213 (1991). Thus, Plaintiffs must have pled special damages for their defamation claim to survive. Special damages exist where the plaintiff can show "a loss of money or some other material temporal advantage capable of being assessed in monetary value." Hood v. Dun & Bradstreet, Inc., 486 F.2d 25, 33 (5th Cir. 1973).[3] Specifically, the "loss of employment, income, or profits" is sufficient to show special damages. Id.

In their Complaint, Plaintiffs allege that they have tried to refinance their home and have been unable to do so because of the false statements PHH reported to the credit bureaus. Thus, Plaintiffs have alleged the loss of an advantage that may be measured in monetary value, and thus sufficiently pled special damages. PHH's request to dismiss Plaintiffs' defamation claim is therefore **DENIED.**

---

[3] In Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted all cases decided by the former Fifth Circuit before October 1, 1981.

### 3. Intentional Infliction of Emotional Distress Claim

To recover for intentional infliction of emotional distress under Georgia law, a plaintiff must show: (1) intentional or reckless conduct by the defendant that was (2) extreme or outrageous and (3) was causally connected to the plaintiff's severe emotional distress. Johnson, 351 F. Supp. 2d at 1381. Whether a defendant's conduct is sufficiently outrageous or egregious to support a claim for intentional infliction of emotional distress is a question of law. Yarbray v. S. Bell Tel. & Tel. Co., 261 Ga. 703, 706, 409 S.E.2d 835, 836 (1991). Generally, a defendant is only liable where "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Norfolk S. Ry. Co. v. Spence, 210 Ga. App. 284, 285, 435 S.E.2d 680, 682 (1993).

In Count Four, Plaintiffs allege that Coldwell Banker committed the tort of intentional infliction of emotional distress by intentionally disobeying the consent order the parties entered into in April 2010. Given the stringent standard for extreme and outrageous conduct, even accepting the Plaintiffs' well-pleaded allegations as true, Plaintiffs have failed to state a claim for intentional infliction of emotional distress. See, e.g., Cook v. Covington Credit of Ga., Inc., 290 Ga. App. 825, 660 S.E.2d 855 (2008) (no intentional infliction of emotional distress where employees of loan company made

11

numerous demands for payment over the phone and engaged in a physical altercation with the borrower); Jenkins v. Wachovia Bank, Nat'l Assoc., 309 Ga. App. 562, 711 S.E.2d 80 (2011) (conduct of bank employees was not extreme or outrageous where the employees intentionally cashed a check over a forged endorsement and intentionally or recklessly caused the named payee emotional distress). In this case, Plaintiffs allege only that they were threatened with foreclosure and prevented from refinancing their home. PHH's alleged conduct does not rise to the level of extreme or outrageous, and the request to dismiss Count Four of Plaintiffs' Amended Complaint is **GRANTED.**

   **4. Conversion**

In Count Seven, Plaintiffs allege that PHH converted their escrow funds when it refused to turn them over after receiving the Bankruptcy Court's Escrow Order and Plaintiffs' July 24, 2010 demand letter. Under Georgia law, conversion may be shown through "an act of dominion over the personal property of another inconsistent with his rights," or by "an unauthorized appropriation." Kornegay v. Thompson, 157 Ga. App. 558, 559, 278 S.E.2d 140, 142 (1981). Plaintiffs allege the second type of conversion and must show: "(1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property." Trey Inman & Assoc., P.C. v. Bank of Am., N.A., 306 Ga. App. 451, 457, 702 S.E.2d 711, 716 (2010).

PHH argues that Plaintiffs have failed to allege facts sufficient to show that they demanded return of the funds. Specifically, PHH asserts that Plaintiffs' July 24, 2010 request for whatever funds remained in their escrow account cannot constitute a demand as a matter of law. The Court, however, is unconvinced. The cases cited by PHH in support of this statement either do not involve conversion, or involve situations where there was no demand or request for the property at all. Moreover, case law supports Plaintiffs' claim that they adequately demanded return of the funds. See, e.g., Thomas v. Statewide Beverage Equip., Inc., 152 Ga. App. 293, 262 S.E.2d 575 (1979) (testimony that plaintiff sought out the property in question and was refused held sufficient to show demand and refusal for purposes of conversion claim). Thus, PHH's request to dismiss Plaintiffs' conversion claim is **DENIED.**

**5. Punitive Damages**

In Count Six, Plaintiffs seek punitive damages. PHH asserts that this request should be dismissed, arguing that all of Plaintiffs' claims potentially supporting such a request fail as a matter of law. O.C.G.A. § 51-12-5.1 provides that punitive damages may be awarded in tort actions where the defendant's actions show "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." Since this Court did not dismiss all of Plaintiffs' intentional tort claims, and Plaintiffs' claims for

defamation and conversion would potentially support an award of punitive damages, PHH's motion to dismiss Plaintiffs' request for punitive damages is **DENIED.**

Thus, PHH's motion to dismiss is **GRANTED** as to Counts One and Four of Plaintiffs' Amended Complaint.  PHH's motion is **DENIED** as to Counts Two, Three, Six, Seven and Eight of Plaintiffs' Amended Complaint.  The parties must comply with the Rules 16/26 Order [Doc. 6] and submit a proposed Scheduling and Discovery Order within fourteen (14) days of the date of this Order.

SO ORDERED, this 9th day of November, 2011.


S/  C. Ashley Royal
C. ASHLEY ROYAL, CHIEF JUDGE
UNITED STATES DISTRICT COURT


AES/ssh